### SAVORGNAN v. UNITED STATES et al.
### Civil Action No. 1738.

District Court, W. D. Wisconsin.
Sept. 10, 1947.

Edgar M. Alstad, of Madison, Wis., for plaintiff.

Charles H. Cashin, U. S. Atty., and James E. Doyle, Asst. U. S. Atty., both of Madison, Wis., for defendants.

STONE, District Judge.

In this action plaintiff seeks judgment declaring that she is an American citizen.

It appears from the proofs submitted that plaintiff was born at Reedsburg, Wisconsin, on May 2, 1915; that her parents were both native born Americans. From the date of her birth until July 15, 1941, she resided continuously in the United States; that on or about August 1, 1940, at St. Louis, Missouri, at the suggestion of her then intended husband, Alessandro Savorgnan, she applied through the Italian Consulate at Chicago, Illinois, for Italian citizenship. The application was made solely for the purpose of obtaining consent from the Italian Government to her marriage to Savorgnan, who was at that time in the Diplomatic Service of Italy and located in this country. On November 23, 1940, at Chicago, Illinois, the plaintiff, at the request of said Savorgnan, signed an oath of allegiance to the Italian Government. The application and oath were written in Italian. Plaintiff at that time could

not read, write, or understand that language. She assumed that the signing of the documents was but a step in obtaining consent of the Italian Government to her marriage.

Plaintiff married Alessandro Savorgnan on December 26, 1940, at Waukon, Iowa. He was at that time Italian Vice Consul at St. Louis, Missouri, having served in that post since 1936.

On February 5, 1941, she signed a form filled out in the English language and prepared by her husband, required to be filed with the United States Department of State by members of the families of foreign diplomats residing in the United States, and in this form she listed her present nationality as Italian.

On or about July 15, 1941, Savorgnan, along with other consular personnel throughout the United States, was compelled, by executive order, to leave the country. Practically without notice and without any opportunity for any planned or considered departure, plaintiff accompanied her husband to Italy. No time was permitted for her to obtain an American passport before her departure and she departed from this country on a foreign visitor's visa.

Due to the outbreak of the war and its continuation subsequent to her arrival in Italy, she was compelled to remain in that country from July 1941 until she returned to the United States in 1945. Her absense from the United States was due to the war time conditions. In July 1941 when she left this country for Italy she did so without any intention of establishing a permanent residence abroad or abandoning her residence in the United States, or of divesting herself of her American citizenship.

On June 19, 1944, upon the entry of the United States Army into Rome, she immediately identified herself with the American Military Authorities and was thereafter employed by the Allied Control Commission and served with it continuously until she returned to the United States in 1945.

On October 15, 1944, upon the reopening of the United States Consulate in

Rome, she applied through the regular procedure for registration as an American citizen.

On January 1, 1945, the American Consulate at Rome notified her in writing that the Department of State had approved her registration as an American citizen, and directed her to appear at the Consulate not later than October 23, 1946, to renew the registration and prevent its expiration.

Between January and April 1945, both the U. S. Army and the U. S. Navy Authorities arranged transportation for her return to the United States. Upon her request to the U. S. Consul at Rome for her passport, she was informed that a passport would not be issued inasmuch as her registration was being reconsidered and that the outcome was pending in the State Department in Washington.

On June 1, 1945, she was advised by the U. S. Consul at Rome that the State Department was of the opinion that she had expatriated herself and that no passport would be issued. She was advised, however, that she would be given a visitor's visa. She returned to the United States on November 1, 1945, on an Italian Diplomatic Passport. While she was awaiting the decision of the State Department with reference to her status as an American citizen she received word of her mother's serious illness and made plans to promptly return to this country, and it was for that purpose she used the Italian Diplomatic Passport. Her mother died before she arrived in Wisconsin.

The plaintiff testified that at the time she signed the application for Italian citizenship and the oath of allegiance to the Italian Government, she simply signed the two documents, Exhibits 1 and 2, without any formal proceedings. Both documents were signed in this country before an Italian officer and not before any official of the United States Government. At the time she signed the documents she had no intention whatsoever of renouncing her allegiance to this country, or establishing a permanent residence in any other country. After her arrival in Italy she took no steps whatsoever to renounce her allegiance to the United States, but was in fact, at the first opportunity, employed in Italy by the Allied Control Commission.

Plaintiff relied on her husband's statement and assurance, that by signing the documents identified as Exhibits 1 and 2, she merely acquired a technical Italian citizenship, which status would in no way endanger her American citizenship. She never voted at any election in Italy but did vote in Wisconsin before and after her marriage.

██ ██ I am satisfied from the proofs submitted that at the time plaintiff signed Exhibits 1 and 2 she had no present or fixed intention in her mind to expatriate herself. She remained in this country for about seven months after signing the documents in question.

"Expatriation is a matter of intent on the part of the person concerned, which intent must be shown by some express act or some other act from which it can be gathered." Perkins, Secretary of Labor, et al. v. Elg, 69 App.D.C. 175, 99 F.2d 408, 412.

"Expatriation is the voluntary renunciation or abandonment of nationality and allegiance." Perkins, Secretary of Labor, et al. v. Elg 307 U.S. 325, 59 S.Ct. 884, 889, 83 L.Ed. 1320.

Knowledge is necessary to intention. If plaintiff, at the time she executed Exhibits 1 and 2, did not know or realize that she was renouncing allegiance to this country, her action was unintentional and of no validity.

Intention is a fact to be proven, and it clearly appears from the proofs submitted in this action that the plaintiff did not intend at the time she signed the documents in question to divest herself of her American citizenship or to establish a permanent residence abroad.

██ Forsaking her country, departing therefrom, and knowingly renouncing her allegiance to it are essential requirements to expatriation. The plaintiff did not knowingly renounce or relinquish her American citizenship and is entitled to judgment declaring her to be an American citizen.